### KEMP v. McBRIDE.

(Circuit Court, D. Massachusetts. April 18, 1904.)

#### No. 1,708.

1. PATENTS—ANTICIPATION—FEED MECHANISM FOR CARDING MACHINES.

　　The Kemp patent, No. 718,130, for feed mechanism for carding machines, *held* valid as against the claim of an infringer that he was himself the original inventor of the mechanism covered thereby.

In Equity. Suit for infringement of letters patent No. 718,130, for feed mechanism for carding machines, granted January 13, 1893, to Harry Kemp. On final hearing.

Roberts & Mitchell and Robert Cushman, for complainant.
Patrick L. McBride and Albert M. Moore, for defendant.

HALE, District Judge. This suit in equity is brought to restrain the alleged infringement of a patent for feed mechanism for carding machines, No. 718,130, issued to the complainant January 13, 1903. The answer of the defendant sets up that the machine described in the patent in suit was invented by the defendant, and by him introduced into public use, before it was invented by the complainant. The defendant further in his answer alleges that the invention and substantial parts of the same were introduced into public use, and were advertised and sold by the defendant as his own. The novelty and utility of the invention are therefore admitted. The

infringement of the patent is also admitted, unless the court shall find that the original invention was the defendant's, instead of being that of the complainant. The defendant shows in his evidence that he has been placing the device upon the market, as well as advertising and selling it, and that he has himself applied for a patent for this identical invention. The only question, then, before the court, is whether the complainant or the defendant is the true inventor. The record shows that the defendant has submitted testimony, and has, by counsel, appeared in a contest of the case, up to the time of the final hearing. At that hearing, however, he did not submit a brief, nor appear in court to argue his case.

The subject-matter of the invention relates to a feeding device, for a carding engine. The patent in suit is for an improvement upon the Apperly feeder. In the carding of wool, it is usual to arrange three carding engines tandem. The first carding engine is called the "first breaker"; the second is called the "second breaker"; the third is called the "finisher." Between the first and second breakers, and between the second breaker and the finisher, some sort of a feeding device is required to take the sliver of wool delivered from the next preceding carding engine and feed it into the next succeeding carding engine. This sliver of wool so delivered from engine to engine consists of a coarse, untwisted strand or roping of partly carded fibers. To this feeding mechanism the Kemp patent in suit relates. The features of novelty in the feeding mechanism in controversy consist of the pivoted plate attached to the carrier or traveler, and in the parts carried by that plate. These parts comprise a pair of gears in train, mounted on yielding or movable bearings in the plate, and adapted to carry feed-rolls of various diameters. By these means the feed-rolls separate more or less, as may be required to accommodate the passage of the slivers of wool, which may not be of uniform thickness, and the feed-rolls themselves may be changed, if desired, rolls of larger diameter having a relatively greater surface speed than rolls of smaller diameter. This process enables the operator to feed the sliver of wool with greater or less speed, as the exigencies of the work require. The gears are so constructed that they will remain in mesh, and insure the positive driving of the feed-rolls at all points of separation of the gear axes. When a wide range of movement of the gear axes is desired, in order to afford a considerable separation of the feed-rolls, or to permit a variation in the size of the change feed-rolls, the gears are constructed with elongated teeth, so that they will still remain in mesh as their axes separate. As defined in the patent, the condition to be observed is simply that the gear teeth shall be of greater depth than the extreme range of separation of the gear axes.

The testimony induces the court to believe that the machine embodying these features was conceived by the complainant, the patentee, in the latter part of the year 1898. At that time he made a sketch showing the essential features of the invention. He also made a leather-board pattern of it, and began the construction of a model, partly of metal and partly of wood. He completed the model in the early part of the year 1899. Ample testimony tending

to show his invention, as above detailed, has been offered. It appears from testimony aside from that of the complainant that he fully explained his invention to several parties. The testimony of these witnesses is persuasive to the court. The record further shows that in September, 1901, the patentee began the construction of a full-sized working machine, embodying all the features of his invention. He completed this machine early in November, 1901, and placed it in operation in the Ætna Mills, at Watertown, Mass., on Monday of the second week in November, 1901. From that time forward the machine did practical work in the Ætna Mills for three or four months. This machine is in evidence, and has been verified by witnesses who saw it, who helped Mr. Kemp to construct it, and who operated it while it was running in the Ætna Mills.

In 1902 the complainant applied for a patent for this machine, and on January 13, 1903, the patent in suit was issued. The defendant testifies that in May, 1901, he conceived the idea of making the feed-rolls of a self-adjustable card-feeder. He does not show what the exact device was which he claims to have conceived at that time. He does not show affirmatively and conclusively that the device which he conceived was the invention in controversy. His bare assertion of his secret thought, unsupported by any corroborative evidence, is not satisfactory proof of the conception of the invention. The earliest date of this inventive thought, which the defendant has made out by sufficient legal evidence, is the latter part of November or the first of December, 1901, when he says he made a machine like the infringing exhibit which is brought before the court. This infringing machine is conceded to contain all the elements of the patented invention. The date of the making of this machine is established only by the verbal testimony of the defendant and one of his men, and is not corroborated by any drawings, models, or machines; but it appears from the testimony that the complainant's actual and practical use of his full-sized machine was three or four weeks earlier than the date testified by the defendant to have been the time when he made his first machine, and the testimony shows that the complainant conceived the idea of his invention three years before this time. It seems clear, then, upon examination of the testimony, that, on the face of the record, the weight of the evidence shows the complainant to be the first inventor.

The testimony before the court, however, is persuasive that, prior to any date on which defendant claims to have made an invention, the complainant fully described and explained his whole invention to the defendant. Kemp had made McBride his licensee under an earlier patent for another type of machine. In the course of negotiations relating to the license under this earlier patent, Kemp disclosed to McBride all his ideas relating to feed mechanisms, patented and unpatented, including the invention in controversy. He made sketches for McBride and explained in detail to him the feeder of the patent in suit. The testimony shows that he made these disclosures upon at least three different occasions between December, 1900, and June, 1901, and this was before defendant had produced any feed mechanism at all. The court must therefore come to the conclusion that the complainant

was the first inventor of the device in controversy, and that the defendant obtained his information concerning the device from the complainant, and afterwards proceeded to put such invention upon the public. In the Barbed Wire Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, Mr. Justice Brown comments upon certain unpatented devices claimed to be anticipatory of the patent in suit in that case, the existence of which was proved only by oral testimony. Although his language is not intended to apply to precisely such testimony as is offered by the defendant in the case at bar, it is clearly descriptive of this class of testimony. He says:

"Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined that they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer."

In further commenting upon the fact that the patentee, who had obtained his patent, was in position to demand distinct proof of anticipation before his own patent could be overthrown, the court says:

"We are not satisfied, however, that he [the patentee] was not the originator of the combination claimed by him of the coiled barb, locked and held in place by the intertwisted wire. It is possible that we are mistaken in this, but some one of these experimenters may have, in a crude way, hit upon the exact device patented by Glidden, although we are not satisfied from this testimony whether or by whom it was done. It is quite evident, too, that all, or nearly all, of these experiments were subsequently abandoned. But it was Glidden, beyond question, who first published this device, put it upon record, made use of it for a practical purpose, and gave it to the public."

We think that the language of the Supreme Court, in the case we have cited, applies to, and is descriptive of, the testimony offered by the defendant in attacking the patent in the case at bar. The complainant has obtained his patent, and is entitled to protection under that patent. There is not sufficient testimony offered to defeat this patent. The court will not at this point in the case make a decree for exemplary damages under Rev. St. U. S. § 4919 [U. S. Comp. St. 1901, p. 3394], but will leave the case for an accounting, and for a final order on the question of damages after such accounting.

A decree is to be entered for complainant for an injunction and an accounting.